**SO ORDERED.**

**SIGNED this 12 day of December, 2008.**



_____
A. Thomas Small
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| PRICE FUNERAL HOME, INC. | 08-04816-8-ATS |
| DEBTOR | |

### MEMORANDUM OPINION AND ORDER REGARDING APPROVAL OF DISCLOSURE STATEMENT AND CONFIRMATION OF PLAN

A hearing to consider the final approval of the chapter 11 debtor's disclosure statement, which was conditionally approved on October 31, 2008, and to consider confirmation of the debtor's plan of reorganization was held on December 9, 2008, in Raleigh, North Carolina. RBC Bank, a secured creditor with a lien on the debtor's real property, objected to the disclosure statement, voted to reject the plan, and objected to confirmation. The debtor seeks to have the plan confirmed pursuant to 11 U.S.C. § 1129(b) without RBC's affirmative vote and over its objection. The bankruptcy administrator supports confirmation of the plan.

Price Funeral Home, Inc., a North Carolina corporation that runs a funeral home in Erwin, North Carolina, filed a petition for relief under chapter 11 of the Bankruptcy Code on July 18, 2008. The debtor is a small business debtor and has operated since the filing of the petition as a debtor in possession. This is Price's second chapter 11 case. The first chapter 11 petition was filed on March

1, 2002, and the debtor's plan was confirmed on August 15, 2002. The plan was substantially consummated, and a final decree was entered on March 24, 2003.

In September 1998, RBC made a loan to Price in the amount of $250,000 secured by a deed of trust on real property (the funeral home) at 904 Lucas Street in Erwin, North Carolina. Interest was to accrue at the rate of 9 per cent per annum, and the debtor was to make monthly payments of $2,564.16 and a final lump sum payment of $226,431.92 on October 6, 2001. Price defaulted and the first case was filed to stay RBC's foreclosure.

In the first case, the debtor's confirmed plan provided for the debt to RBC to be amortized over 12 years with interest accruing at 8 per cent per annum, with a final payment ("balloon payment") coming due after the fifth year. The plan also provided that all unsecured creditors were to be paid in full. The debtor made all of the plan payments except for the balloon payment. RBC and the debtor then agreed to a forbearance agreement in which Price agreed to pay a forbearance fee of $3,000, make monthly payments of $2,000, and to pay the outstanding balance on February 28, 2008. The debtor paid the forbearance fee, made the monthly payments, but again could not pay the balance on the due date. RBC began a foreclosure proceeding, which was stayed when the debtor filed its second chapter 11 petition. Since filing the petition, the debtor has made monthly adequate protection payments to RBC of $2,000.

RBC filed a secured proof of claim in the amount of $183,869.31 with interest accruing at an unspecified rate, but in a per diem amount of $85.73. RBC's objection to confirmation states that the amount outstanding as of December 2, 2008, is $189,073.74 with per diem of $82.73 and attorney's fees of approximately $10,000. The debtor indicated that it may object to the amount of the claim.

The debtor's plan provides for five classes of creditors and one class of equity interests. The only impaired class that voted to reject the plan is Class 3, in which RBC is the only claimant.

Class 1 is administrative claims, which consist of professional fees that will be paid in full on the plan's effective date or as otherwise agreed by a claim holder within the class. This class is not impaired.

Class 2 and Class 2A are for tax claims. Class 2 is priority tax claims consisting of an Internal Revenue Service claim in the amount of $12,200.58 that will be paid in full with interest within five years of the filing date in accordance with § 1129(a)(9)(C). Class 2A is allowed secured tax claims consisting of an IRS secured claim in the amount of $43,869.31 that will be paid in full with interest in quarterly payments within five years of the filing date. The IRS did not file a ballot or a response, but has indicated to the debtor that it agrees with its treatment in the plan.

Class 3 is the allowed secured claim of RBC. The debtor proposes to pay RBC's claim with 8% interest in monthly payments over seven years. RBC voted to reject the plan and filed an objection to confirmation.

Class 4 is general unsecured claims, which are approximately $35,094.54. The plan proposes to pay this class in full by making quarterly payments of $2,000 commencing on May 1, 2009, or on the effective date. At the hearing, the debtor orally modified its plan to provide that creditors in this class would be paid in full with interest at the rate of 6% per annum. The class voted to accept the plan.

Class 5 is equity interests that will be retained and will not be impaired.

The plan also provides in paragraph 3.1 that if the debtor is unable to make plan payments, "the Debtor will sell its real estate to pay all Allowed Claims in full."

RBC objects to the disclosure statement on the ground that it does not contain adequate information. The court agrees that the disclosure statement could have included more information, but a disclosure statement need not be perfect and may be approved if the information is reasonable in the circumstances. In this case RBC has sufficient information to make an informed decision with respect to the plan, and, in fact, even if more information had been provided, RBC would still have voted against it. The key fact is that the real property that secures RBC's claim is worth substantially more than RBC is owed. Mr. Price, the debtor's president, testified that the collateral is worth more than $600,000, and RBC, which has had the property appraised several times, concedes that it is a fully secured creditor and did not offer evidence to the contrary. Furthermore, the debtor's monthly reports provide an adequate description of the debtor's rather uncomplicated financial situation. Accordingly, the court finds that the disclosure statement contains adequate information and the disclosure statement is **APPROVED**.

RBC's primary objections to confirmation of the debtor's plan are that the plan is not feasible because the debtor will not be able to make the plan payments, and that the plan is not fair and equitable as that term is used in § 1129(b).

RBC maintains that the plan is not feasible. The debtor's gross income is down, and making the proposed plan payments at its current revenue levels will not be easy. But, the debtor's president, Kenneth Price, is confident that the payments will be made. The debtor has reduced expenses by cutting salaries, returning some of its leased vehicles and reducing staff to a bare minimum. Mr. Price and his wife also have other resources, such as social security benefits, income Mr. Price receives from the sale of "pre-needs" insurance, and a small inheritance that can be used to help make payments if needed.

Another important consideration is that the debtor's plan provides for the sale of the debtor's real estate if plan payments cannot be met. The court observed in <u>In re Accu-Fab, Inc.</u>, Case No. 04-00651-5-ATS (Bankr. E.D.N.C. Oct. 27, 2004), that

> "[u]nlike debtors in chapter 13 and chapter 12 that must convince the court that the debtor will be able to make all payments under the plan (<u>see</u> §§ 1225(a)(6) and 1325(a)(6)), a chapter 11 plan proponent need only demonstrate that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless liquidation or reorganization is proposed in the plan."

<u>Accu-Fab</u> at 14-15 (citing § 1129(a)(11)). The debtor in this case has shown that there is a reasonable prospect that reorganization will be successful, and has provided for liquidation of its primary asset in the event of default. The terms of the sale upon default will be expanded, and the debtor has met the requirements of § 1129(a)(11).

RBC also argues that the plan is not fair and equitable within the meaning of § 1129(b). RBC contends that the debtor had an opportunity to reorganize in its first chapter 11 case and should not now have another chance. RBC made the loan to the debtor in 1998, and expected to be repaid with interest at 9% in 2001. Instead, as a result of the first chapter 11 plan, the interest rate was reduced to 8% and repayment was to have been made by 2007. According to RBC, it is unfair to further extend the term to 2014. RBC's argument is persuasive; however, the court finds that the debtor's plan is fair and equitable.

The debtor has done the best it can to repay RBC. RBC has sufficient security to assure that it will be repaid, and with enhanced default provisions, may be better situated to realize on its collateral than if it has to foreclose. The debtor has a reasonable chance of making the plan payments, but if it cannot, the property will be sold in a manner acceptable to RBC, without RBC having to go through the expensive foreclosure process. This will be the debtor's last chance to pay

this loan, and if the debtor defaults, the property will be sold.  RBC may propose reasonable default and sale terms that the court will add to the order entered confirming the plan.

Finally, with regard to the interest rate, the court finds that a rate of 8% (prime rate of 4% plus a risk factor of 8%) is an appropriate rate according to the standard adopted by the court in <u>Till v. SCS Credit Corp.</u>, 541 U.S. 465, 124 S. Ct. 1951 (2004).  <u>See</u> <u>In re Accu-Fab, Inc.</u>, Case No. 04-00651-5-ATS (Bankr. E.D.N.C. Oct. 27, 2004).

The plan is confirmable pursuant to § 1129(b) and a separate confirmation order will be entered.  The confirmation order will later be amended to add reasonable default and sale language proposed by RBC.

**SO ORDERED**.

**END OF DOCUMENT**